UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

GEORGE GILLETT,                                                          Plaintiff

v.                                             Civil Action No. 3:19-cv-00260-RGJ

SPIRIT COMMERCIAL AUTO RISK                                          Defendants
RETENTION GROUP, INC.,
CTC TRANSPORTATION INSURANCE
SERVICES, LLC,
and
SARMAN TRUCKING, LLC,


**MEMBER CASE**:

GEORGE GILLETT,                                                          Plaintiff

v.                                             Civil Action No. 3:20-cv-00058-RGJ

THOMAS MULLIGAN, et al.,                                              Defendants


\* \* \* \* \*

**<u>MEMORANDUM OPINION & ORDER</u>**

Plaintiff, George Gillett ("Gillett") sues Defendants Spirit Commercial Auto Risk

Retention Group, Inc. ("Spirit"), CTC Transportation Insurance Services, LLC ("CTC"), Sarman

Trucking, LLC ("Sarman"), Thomas Mulligan ("Mulligan"), Criterion Claim Solutions of Omaha,

Inc. ("Criterion"), Lexicon Insurance Management, LLC ("Lexicon"), Chelsea Financial Group,

Inc. ("Chelsea"), 10-4 Preferred Risk Managers, Inc. ("10-4 Preferred Risk"), and County Hall

Insurance Company, Inc. ("County Hall" and collectively "Defendants"). Defendants, CTC,

Mulligan, Criterion, Lexicon, Chelsea, 10-4 Preferred Risk, and County Hall ("Moving

Defendants") move to dismiss. [DE 39; 47; 48; 49; 50; 51; 52; 53]. Spirit separately moves to

dismiss based on lack of subject matter jurisdiction.  [DE 11].  Gillett responded [DE 23; 55; 57], and Defendants filed replies [DE 24; 58; 61; 62; 65; 66; 67; 69].  Gillett also moves to remand this case to Kentucky state court.  [DE 54].  The Moving Defendants responded, opposing remand. [DE 56, 63, 64, 68].  Gillett replied.  [DE 70].  Sarman has not appeared.  These matters are now ripe.

For the reasons below, the Court **DENIES** Gillett's Second Motion to Remand [DE 54], **DENIES** Spirit's Motion to Dismiss for Lack of Jurisdiction [DE 11], and **DENIES** Moving Defendants' Motions to Dismiss,  [DE 39; 47; 48; 49; 50; 51; 52; 53].  As oral argument regarding Moving Defendant's Motions is unnecessary, the Court **DENIES** Spirit's Motion for Hearing [DE 71], and **DENIES** Lexicon's Motion for Hearing [DE 73].

## I.    FACTUAL BACKGROUND

Plaintiff, George Gillett obtained a judgment in Indiana against Sarman for damages resulting from a trucking crash involving Sarman and Gillett ("Indiana Judgment").  [DE 1-2 at 30].  In that case (the "Indiana Action"), Gillett attempted, but failed to serve Sarman through Sarman's registered agent who Gillett alleges resides in Kentucky. [DE 55 at 1597–98].  Sarman is a now a defunct Kentucky corporation.  [*Id.*]  Gillette sought to serve Sarman's registered agent by mail and by process server.  [*Id.*].

After failing to serve Sarman's registered agent six times, Gillett moved the Indiana court for permission to serve Sarman by publication.  [DE 51-1 at 1419].  The Court granted Gillett's motion, and Gillett published notice of the lawsuit in *News and Tribune*, an Indiana newspaper covering Clark and Floyd Counties in southern Indiana.  [DE 51 at 1383].  Gillett then mailed the various pleadings in the case to both Sarman's business address and Sarman's registered agent's home address.  [DE 51 at 1383; DE 55 at 1599].  These pleadings included Gillett's Rule 36

admissions, which asked Sarman to admit among other things, that Gillett was entitled to $750,000 in damages.  [*Id.*].

Neither Sarman nor its registered agent appeared in the case or responded to the Rule 36 admission.  Gillett filed a motion for summary judgment in the Indiana Action.  [DE 51 at 1383]. The Indiana court granted Gillett's Motion for Summary Judgment and entered judgment against Sarman in the amount of $750,000.  [DE 51 at 1384].  Sarman failed to pay the Indiana Judgment.

Gillett then filed a complaint ("First Complaint") in Kentucky against Spirit, CTC, and Sarman resulting from the parties' failure to pay the Indiana Judgment.  [DE 1-2, ("First Compl.") at 16, 20–28].  Gillett alleges that Spirit was Sarman's insurance company when the Indiana Judgment was entered, and thus must pay the Judgment.  [First Compl. at 20–21].  Gillett also alleges that CTC is responsible for paying the Indiana Judgment because "Spirit completed the extension of its reinsurance placement with CTC through 2019."  [*Id.* at 22–26].  Thus, CTC is "responsible for paying any claims that Spirit is financially incapable of paying."  [*Id, ¶* 86].  Gillett also alleges that CTC is responsible for the Indiana Judgment because it is the alter ego of Spirit. [*Id.*, ¶¶ 88–96].  As a result, Gillett seeks a declaratory judgment against both CTC and Spirit in the amount of the Indiana Judgment.  [*Id.* at 27–28].

In January 2020, Gillett filed a second, related complaint against Mulligan, CTC, Criterion, Lexicon, Chelsea, 10-4 Preferred Risk, and County Hall ("Second Complaint").  Gillett alleges that Thomas Mulligan is the owner of CTC and is liable for the actions of CTC.  [DE 1-2, ("Second Compl.") ¶¶ 91; 144].  Gillett alleges Criterion, Lexicon, and Chelsea each received money that should have gone to Gillett.  Gillett alleges that Criterion was the third-party administrator for Spirit, [Second Compl., ¶¶ 92–93], Lexicon was the captive manager of Spirit, [*id.*, ¶¶ 94–95], Chelsea provided premium financing services for Spirit's insurance policies, [*id.*, ¶¶ 96–97], 10-4

Risk provided risk management and loss run services for Spirit, [*id.*, ¶¶ 98–99], and County Hall is another insurance company established by Mulligan, [*id.*, ¶¶ 100–01].  He alleges that each of these Defendants knew or should have known that Spirit was insolvent, but they conspired to conceal the insolvency and continued to perform services and issue policies.  As a result of this conduct, they received money that should have gone to pay Gillett pursuant to the Indiana Judgment.  [*Id.* at 24–27].  Gillett also alleges that these entities are alter egos of Spirit and thus are responsible for the Indiana Judgment.  [*Id.*, ¶¶ 104–19].

The Court consolidated the two actions.  [DE 46].  All parties are diverse and the amount in controversy exceeds $75,000.  [DE 1 at 2–3].

## II.    DISCUSSION

### A.    <u>Removal</u>

Removal to federal court is proper for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  Diversity jurisdiction gives "[t]he district courts . . . original jurisdiction [over] all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. §§ 1332(a), (a)(1).  A defendant removing a case has the burden of proving jurisdiction.  *See Wilson v. Republic Iron & Steel Co*., 257 U.S. 92, 97 (1921).  The Court should determine federal jurisdiction in a diversity case at the time of removal.  *See Rogers v. Wal-Mart Stores, Inc*., 230 F.3d 868, 872 (6th Cir. 2000).  Federal district courts are courts of limited, not general, jurisdiction and "the absence of jurisdiction is generally presumed unless the party invoking federal jurisdiction clearly demonstrates that it exists."  *Parker v. Crete Carrier Corp*., 914 F. Supp. 156, 158 (E.D. Ky. 1996).  For that reason, "[a]ll doubts

[should be] resolved in favor of remand." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (quoting *Brown v. Francis,* 75 F.3d 860, 864–65 (3d Cir.1996)).

Under 28 U.S.C. § 1441(b), federal courts have authority to exercise diversity jurisdiction if none "of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* This "forum defendant rule," prohibits removal if the defendant is a citizen of the state in which the suit was filed. *United Steel Supply, LLC v. Buller*, No. 3:13-CV-00362-H, 2013 WL 3790913, at *1 (W.D. Ky. July 19, 2013). "This rule reflects the belief that even if diversity exists, a forum defendant—a defendant who is a citizen of the state in which it is sued—has no reason to fear state court prejudice." *NFC Acquisition, LLC v. Comerica Bank*, 640 F. Supp. 2d 964, 968 (N.D. Ohio 2009).

"Section 1441(b)'s limitation on removal only applies as a limitation on the defendant at the time he or she actually removes the case." *Terry v. Phelps KY Opco, LLC*, No. 7:20-CV-23-REW, 2020 WL 2500306, at *6 (E.D. Ky. Apr. 20, 2020), report and recommendation adopted, No. 7:20-CV-23-REW-EBA, 2020 WL 2495802 (E.D. Ky. May 14, 2020) (denying remand where the amended complaint clarified that previously unnamed defendants were citizens of Kentucky because "it is the timing that matters when interpreting the forum defendant rule [and] the forum-defendant rule was not at issue [at the time of removal] because the plaintiffs had failed to properly join and serve the Kentucky defendants"). And "[p]ost-removal joinder of a forum defendant does not require remand so long as complete diversity is preserved." *Rogers v. Boeing Aerospace Operations, Inc*., 13 F. Supp. 3d 972, 977 (E.D. Mo. 2014) (quoting *Spencer v. U.S. Dist. Court for the N. Dist. of Cal.*, 393 F.3d 867, 871 (9th Cir.2004)); *Mendoza v. Ferro*, No. CV 18-3807, 2019 WL 316727, at *2 (E.D. Pa. Jan. 24, 2019) (despite later service "the forum state defendant,

had not been properly served at the time of removal, this action was properly removed from the state court").

Gillett does not argue that the Court's January 13, 2020 Order denying remand [DE 31] was wrongly decided. Instead, he argues that because Sarman is now properly served through a warning order attorney, the Court no longer has jurisdiction. [DE 54 at 1586]. Gillett is mistaken. Jurisdiction is decided at the time of removal. So long as the parties remain diverse, later service of a forum defendant does not require remand. *See Terry*, 2020 WL 2500306, at *6; *Rogers,* 13 F. Supp. 3d at 977. As a result, the Court **DENIES** Gillett's Second Motion to Remand [DE 54].

### B. Motions to Dismiss

#### 1. *Legal Standard*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. . . . Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### 2. *Gillett established a valid, enforceable judgment.*

Here, the Moving Defendants argue that Gillett has failed to allege that there is a valid and enforceable judgment. They argue that the Indiana Judgment is invalid because the Indiana Court lacked jurisdiction over Sarman when it issued the Judgment.

"It is a familiar rule [ ] that where a judgment rendered by a court of one state is sought to be enforced in another, the validity of the judgment may be challenged for want of jurisdiction over either the person of the defendant or the subject matter of the litigation and want of jurisdiction in either respect is open to inquiry." *Jackson v. Kentucky River Mills*, 65 F. Supp. 601, 603 (E.D. Ky. 1946); *Griffin v. Griffin*, 327 U.S. 220, 228–29, 66 S. Ct. 556, 560, 90 L. Ed. 635 (1946) ("A judgment obtained in violation of procedural due process is not entitled to full faith and credit when sued upon in another jurisdiction. . . . Moreover, due process requires that no other jurisdiction shall give effect, even as a matter of comity, to a judgment elsewhere acquired without

due process."). For that reason, the Court must first address whether Gillett obtained the Indiana Judgment in violation of due process.

### 3. *Gillett complied with the due process requirements in effecting service on Sarman.*[1]

"Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties." *Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir. 1976). "Therefore, if service of process was not proper, the court must set aside [a judgment]." *Empire Servs., Inc. v. Kanza*, 996 F.2d 1214 (6th Cir. 1993); *In re N.A.A.C.P.*, *Special Contribution Fund*, 849 F.2d 1473 (6th Cir. 1988) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process."); *Volunteers of Am. v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 659 (Ind. App. 2001) ("Ineffective service of process prohibits a trial court from having personal jurisdiction over a defendant.").

---

[1] Defendants assert that service by publication is not is not a proper form of service for *in personam* jurisdiction of nonresidents. [DE 51 at 1390–91]. Defendants rely on outdated or out of jurisdiction cases for this proposition and fail to recognize that one of the cases on which they rely contemplates service by publication for *in personam* jurisdiction of nonresident defendants. *See Milosavljevic v. Brooks*, 55 F.R.D. 543, 549 (N.D. Ind. 1972) ("Thus, service by publication upon a nonresident under the circumstances of this case might be sufficient to satisfy the due process requirements of *Mullane*. Due process does not require that the defendant receive actual notice in every case."); *see also  Waddell v. Com.,* 893 S.W.2d 376, 379 (Ky. Ct. App. 1995) ("While Indiana recognizes that notice by publication is generally . . . not a proper means of service in actions *in personam*, . . . it nevertheless permits notice by publication to substitute for personal service or mail under circumstances where it is not practical or possible to give more adequate notice."). Without controlling authority stating otherwise, the Court finds that service by publication is constitutionally permissible. Defendants also assert that under Indiana Trial Rule 4.4, Gillett was limited to effecting service under Rule 4.6 or 4.1. [DE 39 at 518]. Defendants misread the rule. Rule 4.4 allows service by any of the listed manners of service, including Rule 4.9. As explained in *Milosavljevic*, in which the court analyzed the use of Rule 4.9 as proscribed in TR 4.5, the rule "refers to the manner of service set out in Rule 4.9(B) rather than to the rule in its entirety. The requirement of setting forth the description which appears in Rule 4.13 need not imply that property must be involved but only that if it is involved a description of it must be given." *Milosavljevic*, 55 F.R.D. at 549. Thus, as in Rule 4.5, under Rule 4.4, Gillett had a right to serve Sarman under the "manner of service set out in Rule 4.9." *Id.* This reading of the rules is also consistent with *Milosavljevic*'s assertion that it is leaving open the question of whether "service by publication upon a nonresident under the circumstances of this case might be sufficient." *Id.* at 549.

In determining whether "process was sufficient to permit a trial court to exercise jurisdiction over a party involves two issues: whether there was compliance with the Indiana Trial Rules regarding service, and whether such attempts at service comported with the Due Process Clause of the Fourteenth Amendment." *See Grabowski v. Waters*, 901 N.E.2d 560, 563 (Ind. App. 2009) (citing *In re Adoption of D.C.*, 887 N.E.2d 950, 955–56 (Ind. App. 2008)). To meet due process "'notice [must be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Yoder v. Colonial Nat. Mortg.*, 920 N.E.2d 798, 802 (Ind. Ct. App. 2010) (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L.Ed. 865 (1950)).

> i. *Gillett was diligent in effectuating service on Sarman through its registered agent.*

To effect service of process, a party must comport both with the Indiana Trial Rules and due process. *In re Adoption of L.D.*, 938 N.E.2d 666, 669 (Ind. 2010) ("[O]ur Trial Rules set forth certain standards for notice and service of process . . .[b]ut these rules operate under the umbrella of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.").

Indiana Trial Rule 4.13 governs notice by publication:

> Praecipe for summons by publication. In any action where notice by publication is permitted by these rules or by statute, service may be made by publication. Summons by publication may name all the persons to be served, and separate publications with respect to each party shall not be required. The person seeking such service, or his attorney, shall submit his request therefor upon the praecipe for summons along with supporting affidavits that diligent search has been made that the defendant cannot be found, has concealed his whereabouts, or has left the state, and shall prepare the contents of the summons to be published.

That said, to comply with due process, "the party seeking publication [must] file[] with the trial court 'supporting affidavits [showing] that diligent search has been made that the defendant cannot be found, has concealed his whereabouts, or has left the state.'" *Goodson v. Carlson*, 888 N.E.2d

217, 220–21 (Ind. App. 2008).  This is because "the Due Process Clause requires that in order for constructive notice of a lawsuit to be sufficient, a party must exercise due diligence in attempting to locate a litigant's whereabouts."  *Id.*  "[M]inimal or perfunctory efforts to locate a party are insufficient to justify service by publication, and that if initial attempts to locate or serve a party are fruitless, the circumstances may require more effort to locate the party instead of proceeding directly to service by publication."  *Hair v. Deutsche Bank Nat. Tr. Co*., 18 N.E.3d 1019, 1023 (Ind. App. 2014).

Gillett presented an affidavit from his process server reflecting that she attempted service at Sarman's agent's residence five times over the course of a nine days, at various times of day. [DE 51-1 at 1421].  She also specified that she left notes at the residence, which were removed when she returned and confirmed with an unidentified "resident" that this was Sarman's agent's address.  [*Id.*].

Based on these efforts, Gillett has established that he was diligent in trying to effect service. While Moving Defendants assert that Gillett was not diligent because the process server's attempts at service focused on a potentially outdated address,[2] it is hard to imagine what other address Gillett could to have used.  Further, according to the process server, a resident at the address confirmed that the registered agent resided there.  As a result, continuing to attempt service to that address is not unreasonable.

Additionally, the process server made five total attempts to effectuate service, including attempting at various times of the day.  The process server also left notes and a message with a

---

[2] At the time of the attempted service, it had been over a year since the corporation updated its annual filings.  [DE 65 at 1915].  Later that year, Sarman was administratively dissolved for failure to update its filings.  [*Id.*].

resident of the address in an attempt to contact Sarman's registered agent. Thus, Gillett was diligent in trying to determine Sarman's agent's whereabout and seeking to effect service.

> ii. *Publication in an Indiana newspaper was proper.*

The Court must next assess whether Gillett's method of publication satisfies due process. A "mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 315 (1950). Moving Defendants argue that publication in an Indiana newspaper, where Sarman is a Kentucky corporation and Sarman's registered agent is a Kentucky resident, "was not, under the circumstances here, reasonably calculated to provide notice to Sarman." [DE 51 at 1396]. In response, Gillett argues that whether the publication reached Sarman, his earlier, failed attempts at service combined with publication caused sufficient service. [DE 55 at 1603–05].

The Court disagrees that Gillett's attempted service to Sarman's registered agent meant that he was relieved of his due process obligations in providing service by publication. First, constructive service, such a publication, is only permitted where the "party's whereabouts cannot reasonably and in the exercise of due diligence be ascertained." *Munster v. Groce*, 829 N.E.2d 52, 58 (Ind. App. 2005). Thus, many failed attempts at personal service are a prerequisite for service by publication.

Indiana Trial Rule 4.13 permits service by publication "in a newspaper authorized by law to publish notices and published in the county where the complaint or action is filed, where the res is located, or where the defendant resides or where he was known last to reside." Ind. R. Trial P. 4.13(C).

Gillett published notice in an Indiana newspaper in the county where the Indiana Action was filed. Gillett filed his notice of service by publication in the Indiana Action, which identified

the *News and Tribune* as the newspaper in which he published noticed on three different dates in compliance with Indiana Trial Rule 4.13. [DE 39-1 at 552]. His publication complied with Indiana Trial Rule 4.13 allowing publication "in the county where the complaint or action is filed," and thus service of process was proper. *See Bays v. Bays*, 489 N.E.2d 555, 560 (Ind. App. 1986) (finding that where father believed that mother of his child no longer resided in state and likely resided in North Carolina but failed to locate her, "[h]is notice was published in the county where the action was filed and was proper"); *see also Grabowski*, 901 N.E.2d at 566 (rejecting argument that publication in county were action was filed rather than county of defendants' last known address was improper where nothing in the record establishes that "Plaintiffs should have known, or upon due diligence would have discovered, that the [defendants'] connections to [last known address] extended beyond their home address, where the Plaintiffs served a summons to no avail").

**4.   *The Indiana court granting summary judgment was proper.***

Defendants next argue that the Indiana Judgment is invalid because there was an inadequate basis in the record for the Indiana court's summary judgment. [DE 39 at 525]. Gillett based his summary judgment motion, in part, on factual admissions in his requests for admission, including admissions as to liability and amount of damages. [*Id.*]. The Court deemed these facts admitted when Sarman failed to respond to the requests for admissions served by Gillett within 30 days. [*Id.*]. Defendants assert that it was procedurally improper for the court to deem the unanswered requests for admission as admitted. [*Id.* at 526]. Rather, the court should have considered Sarman a defaulted party, and thus a non-party on whom discovery could not be served. [*Id.*].

Defendants cite several cases in support, but each case is in a context where the plaintiff has moved for default of the non-appearing defendant. [*Id.*]. The default status of the defendant is an essential factor in determining that he is a non-party upon whom discovery cannot be served.

*See Standard Mut. Ins. Co. v. Barkley,* No. 1:10 CV 251, 2012 WL 13081715, at *2 (N.D. Ind. Apr. 4, 2012) ("In considering the appropriate discovery devices that could be utilized when taking discovery of the defaulted defendant, the court ultimately concluded that once the clerk enters default, a defaulted defendant should be treated as a non-party for purposes of discovery.").

Gillett did not move to have Sarman found in default, and so Sarman was not a non-party. Gillett served Sarman with discovery in accordance with Indiana Trial Rule 5 [DE 39-1 at 579–81], and thus under Rule 36, it was appropriate for the court to consider the facts admitted when Sarman failed to respond within 30 days. The facts deemed admitted include admission of liability and the amount of the judgment, [*id.* at 578–79], and thus there was an adequate factual basis for the grant of summary judgment.

### 5. *Gillett has alleged sufficient facts to support for purposes of a motion to dismiss that Conspiring[3] Defendants are the alter ego of Spirit.[4,5]*

Gillett alleges two theories for why the Conspiring Defendants are liable under Sarman's insurance policy, and thus responsible for payment of the Indiana Judgment. The first is that each Conspiring Defendant is the alter ego of Spirit, and, as a result, the Judgment is equally enforceable

---

[3] The term Conspiring Defendants has the meaning as defined in the Second Complaint. [Second Compl., ¶ 102].

[4] Lexicon argues that the Court does not have personal jurisdiction over it because "Plaintiff cannot establish that Lexicon has acted in a manner that would bring Lexicon within the reach of Kentucky's long-arm statute." [DE 47-1 at 731]. The Court need not address this argument at this stage because both Kentucky and federal courts "have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Martin Cty. Econ. Dev. Auth., Inc. v. Cone Drive Operations, Inc*., No. CV 7:17-41-KKC, 2018 WL 1413802, at *3 (E.D. Ky. Mar. 21, 2018) (quoting *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). Because Gillett has sufficiently alleged that Lexicon is an alter ego of Spirit, and Spirit's contacts with Kentucky are uncontested, the Court finds that Gillett has alleged sufficient fact to show that Lexicon is subject to jurisdiction in Kentucky.

[5] CTC argues that Gillett has failed to state a claim against it because each of Gillett's claims stem from a contract to which only Spirit and Sarman were parties. [DE 39 at 510–13]. As a result, Gillett cannot enforce the contractual obligations against them. [*Id.*]. The Court need not address this argument at this stage, because Gillett has alleged sufficient facts to demonstrate that CTC is an alter ego of Spirit.

against them.  Under Kentucky law, to show that a corporate entity is the alter ego of another, Gillett must prove both:

> (1) that the corporation is not only influenced by the owners, but also that there is such unity of ownership and interest that their separateness has ceased; and (2) that the facts are such that treatment of the corporation as a separate entity would sanction a fraud or promote injustice.

*Bear, Inc. v. Smith*, 303 S.W.3d 137, 147–48 (Ky. App. 2010).

In assessing the first prong, courts examine whether "some combination of the following factors is present: undercapitalization, failure to observe formalities of corporate existence, nonpayment or overpayment of dividends, siphoning off of funds by the dominant shareholders, where the majority shareholders have guaranteed corporate liabilities in their individual capacities, and where commingling of personal and corporate funds has occurred." *JPMorgan Chase, Nat. Ass'n. v. Golden Ignot, LLP*, No. 3:14CV-00493-JHM, 2015 WL 94145, at *2 (W.D. Ky. Jan. 7, 2015).  As to the second prong, the court must determine whether "continued recognition of the corporation would sanction fraud or promote injustice," and whether "the injustice must be some wrong beyond the creditor's mere inability to collect from the corporate debtor." *Inter–Tel Technologies*, 360 S.W.3d 152, 165 (Ky. 2012).  Circumstances supporting a finding on the second prong include:  "where a party would be unjustly enriched; (2) where a parent corporation [or individuals] that caused a [company's] liabilities and its inability to pay for them would escape those liabilities; (3) and where an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful." *JPMorgan Chase, Nat. Ass'n.*, 2015 WL 94145, at *4.  "[G]eneralized and conclusory allegations regarding common ownership, employees, management, control, and decisionmaking.... are essentially a recitation of the legal standard and are plainly insufficient to state a claim of alter ego

status." *Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co*., 618 F. App'x

246, 254 (6th Cir. 2015).

Gillett alleges that the Conspiring Defendants are each alter egos of Spirit because

Mulligan owns each entity, CTC advertised that it owns Spirit, all of the Conspiring Defendants

share certain employees, a lawyer employed by CTC is a point person in Spirit's receivership

proceeding, all of the Conspiring Defendants' websites appear to be designed similarly and

maintained by the same individuals, and they share other business resources. [Second Compl., ¶

106]. Gillett also alleges that Spirit was undercapitalized for the benefit of the other entities. [*Id.*,

¶ 107]. That the entities websites are similar and operated by the same individuals, share some

employees, and are owned by Mulligan rise above "a recitation of the legal standard." *Trustees of*

*Detroit Carpenters Fringe Benefit Funds*, 618 F. App'x at 254.

Gillett has asserted that Defendants intentionally undercapitalized Spirit and that "lawyers

and accountants investigating the relationship between CTC and Spirit also confirmed that at least

some of the $30,000,000.00 (thirty million U.S. dollars) had been misappropriated to 'related

entities and persons.'" [Second Compl., ¶ 68]. Gillett has also alleged that each of the Conspiring

Defendants received money "that should have been retained by or paid to Spirit." [Second Compl.,

¶¶ 93, 95, 97, 99, 101]. Taken in the light most favorable to Gillett, the allegations related to

Spirit's undercapitalization and mishandling of its assets are sufficient, at this stage, to meet its

burden of showing that the Conspiring Defendants are alter egos of Spirit. As a result, Gillett's

claim for declaratory judgment will not be dismissed against the Conspiring Defendants.

### 6. *Gillett alleges conspiracy and conversion against the Conspiring Defendants.*

The elements of a conversion claim are (1) ownership rights in a certain property, (2) the

wrongful act of taking or disposing of property, and (3) causing damages. *Davis v. Siemens Med.*

*Sols. USA, Inc.,* 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005), *aff'd*, 279 F. App'x 378 (6th Cir. 2008) citing *Anderson v. Pine S. Capital, LLC,* 177 F. Supp. 2d 591, 603 (W.D.Ky.2001); *Goss v. Bisset,* 411 S.W.2d 50, 53 (Ky.1967). Gillett alleges that he had ownership rights in the insurance proceeds or money, and that the Defendants conspired to misappropriate and loot Spirit, thus preventing it from paying its insurance claims, including Gillett's claims, causing him damage. [Second Compl., ¶¶ 138–43].  At this early stage, Gillett's assertions must be assumed true and taken in a light most favorable to Gillett. Thus, the Court will permit Gillett's claims to proceed at this stage of the proceedings.

"[I]n order to prevail on a claim of civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act."  *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002). Gillett alleges an "unlawful act" as part of his conversion claim.  Taking the allegations in the light most favorable to Gillett, Gillett sufficiently alleges facts to support a claim of conspiracy.  *Watts v. Lyon Cty. Ambulance Serv*., 23 F. Supp. 3d 792, 811 (W.D. Ky. 2014) ("[A] civil conspiracy claim that has no tort to be based upon 'cannot survive as a matter of law.'").

### 7.  *The claim for declaratory judgment against Spirit should not be dismissed.*

Spirit separately seeks an order dismissing it from this action because it is in receivership. [DE 11].  Spirit asserts that on January 11, 2019, the Nevada Commissioner of Insurance petitioned the Eighth Judicial District Court of the State of Nevada ("Liquidation Court") for an order appointing a Receiver over Spirit. The Liquidation Court issued a permanent injunction ("Injunction") and appointed the Nevada Commissioner of Insurance as the Permanent Receiver over Spirit.  [DE 11-1 at 176].

Spirit argues that the Court lacks subject matter jurisdiction because Kentucky's Insurers Rehabilitation and Liquidation Law ("IRLL") provides exclusive jurisdiction of this matter to the liquidation court.  [DE 11-1 at 175].  In the alternative, Spirit argues that the injunction issued in the Nevada receivership action bars this action.  [DE 11-1 at 180].  Gillett responds that the IRRL is unconstitutional under Kentucky law.  Gillett also argues that even if the IRRL is constitutional, it does not prohibit an action seeking entry of a judgment (as oppose to enforcement of a judgment). Finally, Gillett asserts that the injunction entered in Nevada is not entitled to full faith and credit because it stemmed from fraud and collusion.  [DE 22 at 277].

The Court requested that the parties supplement their briefing to address two issues: First, whether application of the IRRL is limited given that Gillett is seeking a declaratory judgment,[6] specifically whether the IRRL preempts federal subject matter jurisdiction under *AmSouth Bank v. Dale,* 386 F.3d 763 (6th Cir. 2004) and *Beam Partners, LLC v. Atkins*, 340 F. Supp. 3d 627, 637 (E.D. Ky. 2018).  Second, whether the injunction, issued by the state of Nevada, is entitled to full faith and credit in this Court, specifically whether Nevada had jurisdiction to issue the injunction barring this action.  *See Superintendent of Ins. of State of N.Y. v. Baker & Hostetler,* 668 F. Supp. 1057 (N.D. Ohio 1986), *aff'd*, 826 F.2d 1065 (6th Cir. 1987) ("Consequently, before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given.").  The parties submitted supplemental briefs.  [DE 35; 36].

In its supplemental brief, Gillett asserts that its claims against Spirit are strictly limited to seeking a declaratory judgment against Spirit in the amount of the Indiana Judgment.  [DE 35 at

---

[6] Gillett confirmed that its cause of action against Spirit is limited to a declaratory judgment.

404 n.14].  In the McCarran–Ferguson act, 15 U.S.C. §§ 1011–1015 (1945), Congress recognized that the business of insurance should be regulated by the states.  Kentucky adopted a comprehensive regulatory scheme for insurance.  *Nichols v. Vesta Fire Ins. Corp.*, 56 F. Supp. 2d 778, 780 (E.D. Ky. 1999).  Kentucky's IRLL requires that:

> In a liquidation proceeding in a reciprocal state against an insurer domiciled in that state, claimants against the insurer who reside within this state may file claims either with the ancillary receiver, if any, in this state, or with the domiciliary liquidator. Claims must be filed on or before the last dates fixed for the filing of claims in the domiciliary liquidation proceeding.

KRS 304.33-570. Nevada and Kentucky are reciprocal states.  [DE 11-1 at 179].  Spirit therefore argues that under the IRLL and the McCarran–Ferguson doctrine the Court lacks jurisdiction.

Even so, Spirit also acknowledges that "declaratory rights action . . . would not impair the operation of insurance insolvency law and that the McCarran–Ferguson Act therefore would not preclude the Court from exercising jurisdiction over the action."  [DE 36 at 476 (citing *AmSouth Bank v. Dale,* 386 F.3d 763, 781 (6th Cir. 2004) ("the threatened declaratory judgment actions against insolvent insurance companies for the purpose of evading liability in a threatened common-law coercive action by the insurance companies have only an attenuated connection to regulating the business of insurance")].  Given the limited scope of the relief sought against Spirit, the Court has jurisdiction and will not dismiss the claim against Spirit.

## III.  CONCLUSION

For these reasons, having considered the above motions and being otherwise sufficiently advised, it is **ORDERED** as follows:

(1) Gillett's Second Motion to Remand [DE 54] is **DENIED**.

(2) Spirit's Motion to Dismiss for Lack of Jurisdiction [DE 11] is **DENIED**.

(3) Moving Defendants' Motions to Dismiss [DE 39; 47; 48; 49; 50; 51; 52; 53] are **DENIED**.

(4) Spirit's Motion for Hearing [DE 71] is **DENIED**.

(5) Lexicon's Motion for Hearing [DE 73] is **DENIED**.

Copies to: Counsel